## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) CRAIG ALLEN PHELPS )
)
    Plaintiff, )
)    Case No.:  CIV-23-755-F
vs. )
)
(1) DANIEL HOLLIMAN, )
)
)
    Defendant. )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
## DANIEL HOLLIMAN'S MOTION FOR SUMMARY JUDGMENT

Robert M. Blakemore, OBA #18656
bobblakemore@ssrok.com
Daniel E. Smolen, OBA #19943
danielsmolen@ssrok.com
Bryon D. Helm, OBA #33003
bryonhelm@ssrok.com
SMOLEN & ROYTMAN
701 South Cincinnati Avenue
Tulsa, Oklahoma 74119
Telephone:  (918) 585-2667
Facsimile:  (918) 585-2669
*Attorneys for Plaintiff*

October 12, 2024

# TABLE OF CONTENTS

*Page*

Table of Contents ......................................................................... i

Table of Authorities ..................................................................... ii

Introductory Statement ................................................................ 1

LCvR 56.1(c) Statement ................................................................ 2

A.  Response to Defendant's "Statement of Uncontroverted Facts" ... 2

B.  Additional Facts Precluding Summary Judgment .......................... 10

Discussion ...................................................................................... 11

Proposition: Officer Holliman is *Not* Entitled to Qualified Immunity ... 11

Standard of Review – Summary Judgment and Qualified Immunity ... 11

 A.  Officer Holliman is Not Entitled to Summary Judgment on the Excessive Use of Force Claim ... 12

  1.  The Fourth Amendment, Rather Than the Fourteenth Amendment, Applies to Officer Holliman's Use of Force Against Mr. Phelps ... 12

  2.  A Reasonable Jury Could Find Facts Supporting a Violation of Mr. Phelps's Constitutional Rights to be Free From Excessive Use of Force ... 13

  3.  Mr. Phelps' Fourth Amendment Rights at Issue Were Clearly Established at the Time of the Alleged Conduct ... 17

 B.  Officer Holliman is Not Entitled to Summary Judgment on the First Amendment Claim ... 19

Certificate of Service ................................................................... 22

**TABLE OF AUTHORITIES**

| *Case* | *Page(s)* |
|---|---|
| *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) | 19 |
| *Austin v. Hamilton*, 945 F.2d 1155 (10th Cir.1991) | 2, 12 |
| *Becker v. Kroll*, 494 F.3d 904 (10th Cir. 2007) | 20 |
| *Bell v. Wolfish*, 441 U.S. 520 (1979) | 13 |
| *Bridges v. Yeager*, 352 Fed. Appx. 255 (10th Cir. 2009) | 16 |
| *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) | 17 |
| *City of Houston v. Hill*, 482 U.S. 451 (1987) | 20, 21 |
| *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577 (2018) | 18 |
| *Doe v. Woodard*, 912 F.3d 1278 (10th Cir. 2019) | 18, 19 |
| *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) | 2, 11, 12, 13, 15 |
| *Graham v. Conner*, 490 U.S. 386 (1989) | 13, 14, 17 |
| *Griffith v. Coburn*, 473 F.3d 650 (6th Cir.2007) | 14 |
| *Guffey v. Wyatt*, 18 F.3d 869 (10th Cir. 1994) | 20 |
| *Henderson v. Glanz*, 813 F.3d 938 (10th Cir. 2015) | 11 |
| *Hope v. Pelzer*, 536 U.S. 730 (2002) | 19 |
| *Johnson v. Jones*, 515 U.S. 304 (1995) | 2, 12 |
| *Jordan v. Jenkins*, 73 F.4th 1162 (10th Cir. 2023) | 5, 7, 20, 21 |
| *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) | 12, 13, 14, 17 |
| *McCoy v. Meyers*, 887 F.3d 1034 (10th Cir. 2018) | 15, 19 |

*Morris v. Noe,* 672 F.3d 1185 (10th Cir. 2012)     *14*

*Mullenix v. Luna,* 577 U.S. 7 (2015)     *18, 19*

*Nieves v. Bartlett,* —— U.S. ——, 139 S. Ct. 1715 (2019)     *20*

*Pauly v. White,* 874 F.3d 1197 (10th Cir. 2017)     *14*

*Perea v. Baca,* 817 F.3d 1198 (10th Cir. 2016)     1, 2, 14, 19

*Redmond v. Crowther,* 882 F.3d 927 (10th Cir. 2018)     19

*Saucier v. Katz,* 533 U.S. 194 (2001)     12

*Sawyers v. Norton,* 962 F.3d 1270 (10th Cir. 2020)     18

*Stearns v. Clarkson,* 615 F.3d 1278 (10th Cir. 2010)     22

*Tanberg v. Sholtis,* 401 F.3d 1151 (10th Cir. 2005)     3, 7

*United States v. McKinney,* 9 F. App'x 887 (10th Cir. 2001)     21

*Vette v. K-9 Unit Deputy Sanders,* 989 F.3d 1154 (10th Cir. 2021)     13

*Weigel v. Broad,* 544 F.3d 1143 (10th Cir. 2008)     19

*Wise v. Caffey,* 72 F.4th 1199 (10th Cir. 2023)     1, 15

*Youngblood v. Qualls,* 308 F. Supp. 3d 1184 (D. Kan. 2018)     22

**COMES NOW** Plaintiff Craig Allen Phelps ("Mr. Phelps", "Phelps" or "Plaintiff"), and respectfully submits his Response in Opposition to Defendant Daniel Holliman's ("Officer Holliman", "Holliman" or "Defendant") Motion for Summary Judgment (Dkt. #32) as follows:

## <u>Introductory Statement</u>

Mr. Phelps was arrested by a Dibble Police Department ("DPD") officer on March 16, 2022. He was suspected of, at most, a nonviolent misdemeanor. Mr. Phelps encountered Officer Holliman at the police station.  Initially, Mr. Phelps was handcuffed to a bench.  Mr. Phelps complied with Officer Holliman's command that he "hop up" to be handcuffed behind his back. Officer Holliman handcuffed Mr. Phelps without incident.

As ***Officer Holliman*** was walking Mr. Phelps to the front door to transport him to county jail, he ***forcefully, and with all of his strength and weight, pulled on Mr. Phelps' handcuffed right arm and body slammed him, head first, onto the hard wood floor.*** *See, e.g.,* Dkt. #32-11 at 4:53-4:56; Dkt. #32-12 at 0:42-0:52. Mr. Phelps' head hit the floor with great force, and he immediately began bleeding from his face. Mr. Phelps' chin had split open.  His face was covered in blood. As Officer Holliman freely admits, during this entire incident, Mr. Phelps was inside of a police station and handcuffed behind his back, with no shoes or shirt on. The Tenth Circuit's "precedent clearly establishes that … ***'officers may not continue to use force against a suspect who is effectively subdued.'"*** *Wise v. Caffey,* 72 F.4th 1199, 1209 (10th Cir. 2023) (quoting *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016)) (emphasis added). And ***"[i]t is … clearly established law in the Tenth Circuit that the use of***

***disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force."*** *Perea*, 817 F.3d at 1204 (emphasis added).

Mr. Phelps was effectively subdued when Officer Holliman violently took him down. This was "disproportionate force to arrest an individual who [wa]s not suspected of committing a serious crime and who pose[d] no threat to others…."

Officer Holliman's Motion for Summary Judgment (Dkt. #32) should be denied.

## **Plaintiff's LCvR56.1(c) Statement**

### **A. Response to Defendant's "Statement of Uncontroverted Facts"**

**1.**    Admit.

**2.**    Plaintiff denies any suggestion that he was being detained pursuant to a warrant or after a probable cause hearing at the time of the use(s) of force at issue. Plainly, he was not. *See, e.g.,* Dkt. #32-2; *see also* "Probable Cause Affidavit for Arrest *Without Warrant*" (Ex. 1). Thus, contrary to Defendant's averments, the Fourth Amendment, and not the Fourteenth, applies to Plaintiff's excessive force claims. *See, e.g., Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir.1991) (emphasis added), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995); *Estate of Booker v. Gomez,* 745 F.3d 405, 419 (10th Cir. 2014). Additionally, the "DPD Offense Report" (Dkt. #32-2), relied upon by Defendant, is inadmissible hearsay. *See* FRE 801; 802. Plaintiff further denies that he was arrested for possession of marijuana paraphernalia. As Mr. Phelps recalls, he was arrested for burning on his own property. *See* Phelps Depo. (Ex. 2) at 5:6-23, 9:5-12. While the initial Probable Cause Narrative makes mention of a green container that "resembles a medical container for Marijuana", there is

no reference to any actual marijuana or paraphernalia on his person. *See* PC Narrative (Ex. 3).

**3-4.**   Admit.

**5.**   Plaintiff denies Defendant's Fact #5 as it is, clearly, based on inadmissible hearsay. *See* Holliman Depo. (Ex. 4) at 81:18 – 82:21. Nonetheless, Plaintiff did initially believe, while waiting in DPD headquarters, that his family was going to come pay his municipal fines, he would then be free to leave, and not taken to the Grady County Jail. *See* Phelps Depo. (Ex. 2) at 8:19 – 10:18.

**6.**   Plaintiff denies that Officer Holliman began the process of transporting Mr. Phelps to the Grady County Jail because his "mother did not show up…." Rather, Officer Holliman testified that when the arresting officer (Officer Dobbs) was "having to go off duty", the decision was made that Mr. Phelps would be transported to the Grady County Jail for booking. *See* Holliman Depo. (Ex. 4) at 82:22 – 83:18.

**7.**   Officer Holliman's purported "belief" that Mr. Phelps had "potential" to become "physically aggressive" is utterly irrelevant. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Conner*, 490 U.S. 386, 397 (1989). As shown below, Officer Holliman's uses of violent force were objectively unreasonable and excessive. Moreover, Officer Holliman's "CLEET" training is irrelevant and inadmissible. *See, e.g., Tanberg v. Sholtis,* 401 F.3d 1151, 1161-63 (10th Cir. 2005). In any event, nothing in the CLEET training materials provided by Defendant condones, or even addresses, the use of

violent force on a detainee or arrestee who has already been subdued by handcuffs. *See, generally,* Dkt. #32-15.

**8.**     Denied. More accurately stated, Mr. Phelps was "extremely disappointed" to learn that he was being taken to the Grady County Jail. *See* Phelps Depo. (Ex. 2) at 9:18 – 10:19.

**9.**     Admit.

**10.**     Admit. For additional pertinent information, *please see* LCvR56.1(c) Statement(B)(1).

**11.**     Plaintiff denies any suggestion that he ever posed a threat to Officer Holliman or that he otherwise failed to comply with commands. While Mr. Phelps did get up off of the bench at one point, and take a few steps in Officer Holliman's direction,  he was subdued by handcuffs behind his back. *See, e.g.,* Dkt. #32-10 at 16:52 – 17:19. Further, as soon as Holliman commanded that he "sit down", Mr. Phelps replied "okay, I will" and complied with the command. *See* Dkt. #32-5 at 2:17-2:23; Dkt. #32-6 at 4:20-22. Furthermore, while Defendant asserts that Mr. Phelps "twice" got up off the bench without being ordered to do so, Mr. Phelps asked for permission before standing up the second time. *See* Dkt. #32-5 at 3:17-3:22; Dkt. #32-6 at 5:21 ("May I stand up?").

**12.**     Plaintiff admits that the statements transcribed by Defendant were uttered during Mr. Phelps' conversation with Officer Holliman. Plaintiff nevertheless denies the suggestion that he posed any threat to Officer Holliman. Mr. Phelps was handcuffed behind his back during the entire interaction with Officer Holliman. *See, e.g.,* Dkt. #32-10 at 14:30 – 19:58. Additionally, Mr. Phelps repeatedly made it clear that he was not even verbally threatening Officer Phelps. *See, e.g.,* Dkt. #32-6 at 3:14 ("I apologized"), 3:21-22 ("I'm not talking to you like no punk"); 4:11-14 ("…I'm not going to attack you…[w]hy don't people

understand that?"), 5:7-9 ("I like you…"); 5:23 ("I have never attacked anybody"), 6:21 –

7:1 ("I'm a good soul. I'm nothing to be afraid of, man.").

**13.**    Admit.

**14.**    Plaintiff disputes the assertion that he attempted to "forcefully pull away from

Officer Holliman." After Officer Holliman began to direct Mr. Phelps toward the door,

Phelps said to Holliman, "Let me get this water right here." Dkt. #32-11 at 4:47-4:52; Dkt.

#32-6 at 7:18-25. Mr. Phelps recalls being "extremely thirsty." Phelps Depo. (Ex. 2) at

41:1-13. Phelps then began to walk toward the blue lockers on the wall. *See* Dkt. #32-11 at

4:47-4:53. Next, Phelps repeated something about "water." *Id.* All the while, Mr. Phelps

was subdued by handcuffs behind his back. After Mr. Phelps began to walk toward the

lockers, Officer Holliman pulled Phelps -- by his right arm -- away from the lockers. *Id.* The

handcuffed Phelps briefly leaned back in the other direction. *Id.* Nonetheless, Mr. Phelps

did not break away from Officer Holliman. *See* Holliman Depo. (Ex. 4) at 112:1-19. And

Officer Holliman had his hands on the handcuffed Phelps the entire time. *Id.*

**15.**    Plaintiff disputes the assertion that he posed any apparent risk of harm to Officer

Holliman or that it was reasonable to believe he would or could "escape" or "kick", "spit

on" or "headbutt" Holliman. *See* Dkt. #32-11 at 4:47-4:53. Fundamentally, nowhere in the

deposition testimony cited to by Defendant does Officer Holliman indicate that he feared

Mr. Phelps would "kick", "spit on" or "headbutt" him, prior to the forceful takedown. *See*

Dkt. #32-3 at 86:3-25 to 87:1-5, pp. 95:10-25 to 96:1, 105:9-16, 109:5-17, 111:17-25 to

112:1, 114:11-25. **Officer Holliman admits** that the available video does not depict Mr.

Phelps trying to "fight" him and that **Phelps never did actually try to fight him.** *See*

Holliman Depo. (Ex. 4) at $119:23 - 120:13$. Moreover, it is axiomatic that Phelps could not "escape" from a locked police station, while handcuffed, and in the presence of two armed police officers. Officer Holliman's training is irrelevant in determining whether his use of force was objectively reasonable under the circumstances. *See, e.g., Tanberg v. Sholtis,* 401 F.3d 1151, 1161-63 (10th Cir. 2005). In any event, nothing in the training materials provided by Defendant condones, or even addresses, the use of violent force on a detainee or arrestee who has already been subdued by handcuffs. *See, generally,* Dkt. #32-15.

16.    Plaintiff disputes the characterization of Officer Holliman's use of force as "displac[ing] Plaintiff's balance by spinning him down to the floor…." Rather, ***Officer Holliman forcefully, and with all of his strength and weight, pulled on Mr. Phelps' handcuffed right arm and body slammed him, head first, onto the hard wood floor.*** *See, e.g.,* Dkt. #32-11 at 4:53-4:56; Dkt. #32-12 at 0:42-0:52. Mr. Phelps' head hit the floor with great force, and he immediately began bleeding from his face. *See* Dkt. #32-11 at $4:56 - 5:26$; *see also* Dkt. #32-10 at $18:30 - 19:14$. Mr. Phelps' face was covered in blood. *See, e.g.,* Dkt. #32-10 at 19:49. To use Officer Holliman's own words, Mr. Phelps' chin had "split open." Holliman Report (Ex. 5). As Officer Holliman freely admits, during this entire incident, Mr. Phelps was inside of a police station and handcuffed behind his back, with no shoes or shirt on. *See* Holliman Depo. (Ex. 4) at $94:25 - 95:9$.

17.    Officer Holliman's purported "belief" that he needed to "maintain control" of Mr. Phelps in no way justifies his use of a violent takedown/body slam on a handcuffed arrestee. Officer Holliman's "CLEET" training is irrelevant and inadmissible. *See, e.g., Tanberg v. Sholtis,* 401 F.3d 1151, 1161-63 (10th Cir. 2005). In any event, nothing in the CLEET

training materials provided by Defendant condones, or even addresses, the use of violent force on a detainee or arrestee who has already been subdued by handcuffs. *See, generally,* Dkt. #32-15.

**18-19.** Admit.

**20.** Plaintiff disputes any suggestion Mr. Phelps cursing at Officer Holliman, particularly after Holliman had violently assaulted him at the police station, provides justification for a *second* use of violent force on Mr. Phelps while he was handcuffed. *See, e.g., Jordan v. Jenkins,* 73 F.4th 1162, 1169 (10th Cir. 2023). For additional pertinent information, *please see* LCvR56.1(c) Statement(B)(2).

**21.** Officer Holliman's "CLEET" training is irrelevant and inadmissible. *See, e.g., Tanberg v. Sholtis,* 401 F.3d 1151, 1161-63 (10th Cir. 2005). In any event, nothing in the CLEET training materials provided by Defendant condones, or even addresses, the use of violent force on a detainee or arrestee who has already been subdued by handcuffs. *See, generally,* Dkt. #32-15. And, certainly the CLEET training materials provided by Defendant do not justify the use of violent force on a handcuffed arrestee in retaliation for the use of "verbal aggression." *Id.*

**22.** Admit. *See also* LCvR56.1(c) Statement(B)(2).

**23.** Admit.

**24.** Plaintiff disputes any suggestion that the use of coarse language provides a basis for the use of violent force on a handcuffed arrestee. *See, e.g., Jordan v. Jenkins,* 73 F.4th 1162, 1169 (10th Cir. 2023). It is clear, from the body camera footage, that the handcuffed Mr. Phelps posed no threat of harm to Officer Holliman at the Hospital. *See, e.g.,* Dkt. #32-16.

**25.**    Admit.

**26.**    Plaintiff denies that he "*had*" to be urged forward. While handcuffed, and being pushed down the Hospital hall, Mr. Phelps asked Officer Holliman, "You going to hit me?" Dkt. #32-16 at 2:24 − 2:27; Dkt. #32-21 at 4:4-6. Officer Holliman replied, "if you want to play stupid again, we can go." *Id.* Mr. Phelps asked, "Are you trying to pick me up and push me around? Really?" Dkt. #32-16 at 2:28 − 2:54; Dkt. #32-21 at 4:7-9. Officer Holliman then proceeded to manhandle, push and aggressively shove Mr. Phelps toward -- and out of -- the first front door. *See* Dkt. #32-16 at 2:28 − 2:54. Mr. Phelps felt like he was being "led down the hallway to [his] execution." Phelps Depo. (Ex. 2) at 36:12 − 37:4.

**27.**    Admit.

**28.**    Disputed. The evidence does not establish that *Mr. Phelps* caused Holliman's body worn camera to break loose. *See* Dkt. #32-16 at 2:54 − 3:05. If Mr. Phelps attempted to slow down, it was because he did not want to get into a vehicle with Officer Holliman after he had previously assaulted and injured him at the police station. *See, e.g.,* Phelps Depo. (Ex. 2) at 37:5 − 38:15.

**29.**    Admit.

**30.**    Denied. Mr. Phelps attempted to keep walking while exiting the Hospital. *See* Dkt. #32-16 at 3:05 − 3:10. As he was attempting to walk forward, Mr. Phelps said, "What are you doing? Okay. You can't slam me now, can you? I'm just saying. You can't do it now, can't manhandle me. Man, why you do this to me?" *Id.*; *see also* Dkt. #32-21 at 4:18-20. Concerned for his safety if he got in the car with Officer Holliman, Mr. Phelps *then*

attempted to stop and began begging for "help". *See, e.g.,* Phelps Depo. (Ex. 2) at 37:5 –

38:15. *See also See* Dkt. #32-16 at 3:05 – 3:24.

**31.**    Plaintiff denies the suggestion that any purported "resistance" he offered justified

Officer Holliman's forceful takedown. *See* Dkt. #32-24 at 00:12 – 00:30.

**32.**    Plaintiff denies that he ever "pull[ed] away" from Officer Holliman. *See* Dkt. #32-

24 at 00:12 – 00:30.

**33.**    Admit.

**34.**    Plaintiff denies the suggestion that any purported "resistance" he offered justified

Officer Holliman's forceful takedown. *See* Dkt. #32-24 at 00:12 – 00:30.

**35.**    Plaintiff denies that he "caused" Officer Holliman to "execute" a leg sweep. *See* Dkt.

#32-24 at 00:12 – 00:30. Plainly, Officer Holliman chose to "execute" a leg sweep, despite

having physical control over the handcuffed Mr. Phelps. *Id.* Plaintiff further denies that

Holliman executed the leg sweep to "assist" in getting Mr. Phelps in the patrol vehicle. The

video establishes that Holliman executed the leg sweep for the purpose of slamming Mr.

Phelps down onto the pavement in the Hospital parking lot. *Id.*

**36.**    Denied. Mr. Phelps was screaming for help because he felt that he was being forced

into a car with his "executioner". Phelps Depo. (Ex. 2) at 38:25 – 39:6. He was willing to

go to jail; he simply did not want to get in a vehicle with Officer Holliman, the man who

had previously body slammed him at DPD headquarters. *See, e.g.,* Phelps Depo. (Ex. 2) at

37:5 – 39:6.

**37.**    Admit.

   **B. Additional Facts Precluding Summary Judgment**

1.      Mr. Phelps complied with Officer Holliman's command that he "hop up" to be handcuffed behind his back. *See* Dkt. #32-5 at 00:44-1:43; Dkt. #32-10 at 14:10-15:23. Officer Holliman handcuffed the compliant Mr. Phelps without incident. *Id. See also* Holliman Depo. (Ex. 4) at 90:24 – 91:5.

2.      Mr. Phelps arrived at Norman Regional Hospital with complaints of a laceration to the chin, headache and knee pain. *See* Dkt. #32-18 at NRH_006. He reported a loss of consciousness after being assaulted by Officer Holliman. *Id.* At the hospital, it was determined that Mr. Phelps had suffered a "[n]ondisplaced fracture of the nasal spine of the maxilla." *Id.* at NRH_007. In layman's terms, the forceful takedown had caused a fracture in the bone right under the corner of Mr. Phelp's eye. *See* Phelps Depo. (Ex. 2) at 14:17 – 15:14. Mr. Phelps also lost his three front teeth as a result of the assault, two by emergency extraction and one that came out at the Jail. *Id.*

3.      Dibble's Chief of Police told Officer Holliman, after the fact, that his use of violent force on a handcuffed suspect could create bad "optics…." Holliman Depo. (Ex. 4) at 127:23 – 131:12. The Chief specifically told Officer Holliman that he could see how the use force on a handcuffed arrestee might be viewed as "excessive." *Id.*

4.      When Officer Holliman wrote his Incident Report after at the police station, he failed to mention that Mr. Phelps was handcuffed at the time of the takedown. *See* Holliman Depo. (Ex. 4) at 104:7-18; Holliman Report (Ex. 5). Officer Holliman characterizes this omission from his report as a simple "mistake." *Id.* However, Officer Holliman *falsely* stated, in the Incident Report, that, prior to the forceful takedown, Mr. Phelps began to ***"wildly swing his arms…."*** Holliman Report (Ex. 5).  Of course, because Mr. Phelps was

handcuffed behind his back, he could not possibly, and did not, "wildly swing his arms…." *See, e.g.,* Dkt. #32-11 at 4:53-4:56; Dkt. #32-12 at 0:42-0:52.

**5.**    The District Attorney declined to file charges against Mr. Phelps. *See* Declination of Charges (Ex. 6).

**<u>Discussion</u>**

**<u>PROPOSITION:</u> OFFICER HOLLIMAN IS *NOT* ENTITLED TO QUALIFIED IMMUNITY**

### Standard of Review – Summary Judgment and Qualified Immunity

"When the defendant has moved for summary judgment based on qualified immunity, [the court must] still view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez,* 745 F.3d 405, 411 (10th Cir. 2014). *See also Henderson v. Glanz,* 813 F.3d 938, 952 (10th Cir. 2015). In cases where a qualified immunity defense is adequately raised, at the summary judgment stage, courts will grant qualified immunity unless "the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker,* 745 F.3d at 411 (citing *Saucier v. Katz,* 533 U.S. 194, 201–02, (2001)).

Here, as discussed more fully *infra*, Mr. Phelps has shown that a reasonable jury could find facts supporting a violation of a clearly-established constitutional right. Thus, summary judgment on Plaintiff's Fourth Amendment excessive force and First Amendment retaliation claims is unwarranted.

### A. Officer Holliman is Not Entitled to Summary Judgment on the Excessive Use of Force Claim

#### 1. The Fourth Amendment, Rather Than the Fourteenth Amendment, Applies to Officer Holliman's Use of Force Against Mr. Phelps

We begin our analysis by clearing up an apparent source of confusion. In his Motion, Officer Holliman asserts that the Fourteenth Amendment -- and the standard enunciated in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) -- applies to Mr. Phelps' excessive force claim. Dkt. #32 at 13-24. It is true that *Kingsley* governs excessive force claims brought by pretrial detainees under the Fourteenth Amendment. However, it is the *Fourth*, and not the Fourteenth, Amendment which applies here.

The Tenth Circuit has held that the Fourth Amendment, not the Fourteenth, applies to excessive force claims arising from "treatment of [an] arrestee detained without a warrant" and "prior to any probable cause hearing." *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir.1991) (emphasis added), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995). *See also Estate of Booker*, 745 F.3d at 419. The Fourteenth Amendment applies to pretrial detainees who have had a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). Here, because Mr. Phelps was being detained pursuant to a warrantless arrest prior to any probable cause hearing (*i.e.*, prior to any "judicial determination of probable cause") (*See* LCvR56.1(c) Statement(A)(2), *supra*), the Fourth Amendment, rather the Fourteenth, controls.[1]

---

[1]    Nonetheless, whether the Court applies the Fourth or Fourteenth Amendment, the outcome is the same.  In *Kingsley*, the Supreme Court held that a claim of excessive force

### 2. A Reasonable Jury Could Find Facts Supporting a Violation of Mr. Phelps's Constitutional Rights to be Free From Excessive Use of Force

When an arrestee plaintiff, like Mr. Phelps, alleges excessive force, the court applies the reasonableness test announced in *Graham v. Conner*, 490 U.S. 386 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, *without regard to their underlying intent or motivation." Graham*, 490 U.S. at 397 (emphasis added). Under this test, the court considers the totality of the circumstances. *See, e.g., Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021). In evaluating the totality of the circumstances, courts weigh three factors: 1. the severity of the crime at issue, 2. the immediate threat that the suspect posed to officers and others, and 3. any active resistance or attempt to flee by the suspect. *Graham*, 490 U.S. at 396.

Applying the *Graham* factors, the unreasonableness of Officer Holliman's uses of force becomes clear. As to the **first *Graham* factor**, the evidence is that Mr. Phelps was suspected of committing a nonviolent misdemeanor. Thus, at ***most***, Mr. Phelps was a suspected "nonviolent misdemeanant…." *Morris v. Noe*, 672 F.3d 1185, 1198 (10th Cir.

---

brought under the Fourteenth Amendment is governed by an objective standard of fault. *See, Kingsley*, 135 S. Ct. at 2472. Whether applying the objective Fourth Amendment standard under *Graham* or the objective Fourteenth Amendment standard in *Kingsley*, Officer Holliman is not entitled to summary judgment on Plaintiff's excessive use of force claim. *See Estate of Booker*, 745 F.3d at 419. Still, it is clear that the Fourth Amendment and related authorities provide the correct legal framework in this case.

2012); *see also, e.g., Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) ("It is ... clearly established law in the Tenth Circuit that the *use of disproportionate force* to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force."). Clearly, the first factor weighs in favor of Mr. Phelps.[2]

The Tenth Circuit has held that "[t]he second *Graham* factor ... is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017). The **<u>second Graham factor</u>** weighs heavily in Mr. Phelps's favor. That is, the evidence shows that Plaintiff posed *no* immediate threat to Officer Holliman, or *anyone* else, when Holliman forcefully body slammed him onto the ground. *See, e.g.,* LCvR56.1(c) Statement(A)(16), *supra.* Indeed, at the time Officer Holliman slammed Mr. Phelps to the ground, at DPD headquarters, he was handcuffed behind his back, wearing no shoes and no shirt, not fighting with Officer Holliman and secure behind the locked door of the police station. *Id.* at (A)(14-16). Similarly, in the Hospital parking lot, Mr. Phelps was subdued by handcuffs behind his back, and freshly injured, when Holliman took his feet out and threw him down to the pavement. *Id.* at (A)(30-36). He made no threatening movements or gestures. *See, generally,* LCvR56.1(c) Statement(A)(11, 14-16, 35); & (B)(1, 3-4), *supra.* It is well-established that officers are prohibited from using violent force on arrestees, like Mr. Phelps, who are "effectively subdued" by, for example, handcuffs. *See, e.g., Perea*, 817F.3d at 1201, 1204-05 (holding that "clearly established [on March 21, 2011] that officers may not continue to

---

[2]    Because Officer Holliman erroneously applies the Fourteenth Amendment/*Kingsley* standard, he fails to address the first *Graham* factor in his Motion.

use force against a suspect who is effectively subdued"); *Wise v. Caffey*, 72 F.4th 1199, 1209 (10th Cir. 2023) (same); *Estate of Booker*, 745 F.3d at 412, 428–29 (same); *McCoy v. Meyers*, 887 F.3d 1034, 1052–53 (10th Cir. 2018) (same). With good reason, it is exceedingly rare for a court to find the use of violent force on a handcuffed arrestee or detainee to be reasonable. In this regard, Officer Holliman does not a cite single published Tenth Circuit decision where the court held that use of violent force on a handcuffed arrestee or detainee was reasonable. *See, generally*, Dkt. #32.

Because Officer Holliman is erroneously urging application of the Fourteenth Amendment, he fails to directly address the second *Graham* factor. The most analogous *Kingsley* factor is the fifth, the threat reasonably perceived by the officer. Officer Holliman baldly argues his actions were based on some "threat he perceived that Plaintiff posed." Dkt. #32 at 23. However, there was no reason to believe that the "effectively subdued" Phelps posed any threat whatsoever. *See* LCvR56.1(c) Statement(A)(11, 14-16, 35); & (B)(1, 3-4), *supra*. Officer Holliman's argument, such as it is, much be rejected. The second *Graham* factor tilts overwhelmingly toward Plaintiff.

Concerning the **third *Graham* factor**, Mr. Phelps was fully compliant and offered no resistance while being placed into handcuffs. *See, e.g.,* LCvR56.1(c) Statement(B)(1). Thus, Mr. Phelps did not actively resist arrest. ***Officer Holliman admits*** that the available video does not depict Mr. Phelps trying to "fight" him and that ***Phelps never did actually try to fight him.*** *See* Holliman Depo. (Ex. 4) at 119:23 – 120:13. Moreover, it is axiomatic that Phelps could not, and did not attempt to, flee from a locked police

station, while handcuffed, and in the presence of two armed police officers. Similarly, Mr. Phelps did not attempt to flee while in the Hospital parking lot. Nonetheless, Officer Holliman argues that, at the police station, he "was escorting Plaintiff to the exit door and Plaintiff was non-compliant by attempted [sic] to pull away and then resisted by pulling away more forcefully." Dkt. #32 at 18. But Mr. Phelps never broke away from Holliman's grasp. *See, e.g.*, Holliman Depo. (Ex. 4) at 112:1-19.

For a split second, the handcuffed and effectively subdued Phelps leaned toward the lockers on the wall. *See* Dkt. #32-11 at 4:47-4:53. This can hardly be classified as active resistance. And to the extent it could be so classified, Officer Holliman's response (*i.e.,* the violent and dangerous body slam) was utterly disproportionate and excessive. *See, e.g., Bridges v. Yeager,* 352 Fed. Appx. 255, 259 (10th Cir. 2009) ("The fact that a suspect was non-compliant or resisted arrest in isolation does not authorize the use of excessive force."); *Griffith v. Coburn,* 473 F.3d 650, 659 (6th Cir.2007) (holding that it is clearly established that when a suspect refuses to follow officer orders, but otherwise poses no safety threat, use of significant force is unreasonable); *Bryan v. MacPherson,* 630 F.3d 805, 832-33 (9th Cir. 2010) ("Officer MacPherson's desire to quickly and decisively end an unusual and tense situation is understandable. His chosen method for doing so [i.e., use of a taser] violated Bryan's constitutional right to be free from excessive force."). The same can be said of the takedown in the Hospital parking lot. *See* Dkt. #32-24 at 00:12 – 00:30.

Overall, applying *Graham*, Officer Holliman's uses of violent force on Mr. Phelps under the circumstances were plainly and blatantly excessive, and objectively unreasonable, in violation of his Fourth Amendment rights.

### 3.    Mr. Phelps' Fourth Amendment Rights at Issue Were Clearly Established at the Time of the Alleged Conduct

Officer Holliman makes only a cursory argument regarding the second prong of the qualified immunity test. In its entirety, Officer Holliman's argument on the "clearly established" element is as follows:

> Plaintiff cannot meet the first prong of the qualified immunity analysis as Officer Holliman did not violate Plaintiff's constitutional rights. Further, Plaintiff has failed to establish that there is any binding precedent from the Supreme Court, Tenth Circuit, or weight of other circuits that demonstrates it was clearly established that at the time Officer Holliman used force on Plaintiff at the DPD and at the Hospital, the law was clearly established that his conduct was in violation of the Fourteenth Amendment or was otherwise objectively unreasonable. Officer Holliman's conduct was consistent with *Kingsley*. Therefore, Officer Holliman is entitled to qualified immunity as to Plaintiff's Fourteenth Amendment claims of excessive force.

Dkt. #32 at 24. First, this argument is based on the false premise that the Fourteenth Amendment and *Kinglsey* apply here. This Court could, and should, overrule the argument on that ground alone.

More fundamentally, Officer Holliman's argument does not adequately raise the second prong of the analysis. Where, as here, a defendant inadequately briefs the "clearly established" law prong, any such argument is waived. *See, e.g.*, *Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020). For instance, in *Sawyers*, the Tenth Circuit held that a defendant waived any argument regarding the "clearly established" law prong where his brief merely "describe[d] the law of qualified immunity, including the clearly established

law requirement [and] present[ed] only a cursory statement in the 'Summary of the Argument' section that Mr. Sawyers was unable to establish clearly established law...." *Sawyers*, 962 F.3d at 1286. In this case, Defendant's qualified immunity "argument", such as it is, is nearly as cursory as the defendant's argument in *Sawyers*. As Officer Holliman has not even properly invoked the "clearly established" law aspect of the analysis, the issue has been waived.

To the extent this Court determines that the matter has not been waived, it should still conclude that the Fourth Amendment right at issue was "clearly established" at the time of Officer Holliman's conduct.

"A constitutional right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, (2018). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 577 U.S. at 12, 136 S.Ct. 305 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "There 'need not be a case precisely on point.'" Doe, 912 F.3d at 1289 (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "[T]he salient question is whether the state of the law gave the defendants fair warning that their alleged treatment of the plaintiffs was unconstitutional." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

"It is ... clearly established law in the Tenth Circuit that the use of disproportionate force to arrest an individual who is not suspected of committing a serious crime and who poses no threat to others constitutes excessive force." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016). In *Perea*, the Circuit held that "[a]lthough use of some force against a resisting arrestee may be justified, continued and increased use of force against a subdued detainee is not." 817 F.3d at 1203. In *McCoy v. Meyers*, 887 F.3d 1034, 1048 (10th Cir. 2018), the Court held that the defendant violated the plaintiff's "clearly established right to be free from continued force after he was effectively subdued." 887 F.3d at 1048. In *Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008), the Court held that any justification for using force ceased "once Mr. Weigel was handcuffed and his legs were bound."

By *twice* forcefully taking Mr. Phelps to the ground when he was effectively subdued by handcuffs behind his back, Officer Holliman violated Mr. Phelps's clearly established rights. This was "use of force without legitimate justification" at a time when Mr. Phelps "pose[d] no threat [*and*] ha[d] been subdued." *McCoy*, 887 F.3d at 1052. Existing precedent was such that every reasonable official would have understood that such conduct constituted a violation of that right. Officer Holliman is not entitled to qualified immunity on the excessive force claim.

## B. Officer Holliman is Not Entitled to Summary Judgment on the First Amendment Claim

Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks omitted). Importantly, for

our purposes here: "***criticism directed at police is protected by the First Amendment and cannot justify adverse police action.***" *Jordan v. Jenkins*, 73 F.4th 1162, 1169 (10th Cir. 2023) (emphasis added). ***"Indeed, the First Amendment does not protect only quiet and respectful behavior towards police; it protects loud criticism that may annoy or distract the officer."*** *Jordan,* 73 F.4th at 1169 (citing *City of Houston v. Hill,* 482 U.S. 451, 453−54 (1987) (officer arrested the defendant because he admitted to "interrupting" the officer); and *Guffey v. Wyatt,* 18 F.3d 869, 870 (10th Cir. 1994) (plaintiff engaged in a "heated exchange" with officer).

To establish a First Amendment retaliation claim, plaintiff must demonstrate (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's action was substantially motivated as a response to his exercise of his First Amendment speech rights. *Becker v. Kroll,* 494 F.3d 904, 925 (10th Cir. 2007). Plaintiff's evidence easily meets this standard.

First, at the Hospital, Mr. Phelps was engaged in constitutionally protected activity by criticizing Officer Holliman's previous use of excessive force. *See, e.g., Jordan,* 73 F.4th at 1169. For instance, as he was exiting the Hospital, Mr. Phelps said, "What are you doing? Okay. You can't slam me now, can you? I'm just saying. You can't do it now, can't manhandle me. Man, why [did] you do this to me?" Dkt. #32-16 at 3:05 − 3:10. Second, Officer Holliman's action (*i.e.,* the forceful takedown in the parking lot) would chill a person of ordinary firmness from continuing to engage in the protected activity. Third, Officer Holliman's action was substantially motivated as a response to Phelps' exercise of his First

Amendment rights. Officer Holliman was obviously agitated by Mr. Phelps' criticism of him at the Hospital. For example, when Mr. Phelps asked Officer Holliman, "You going to hit me?", he replied, "if you want to play stupid again, we can go." Dkt. #32-16 at 2:24 – 2:27; Dkt. #32-21 at 4:4-6. Mr. Phelps next asked, "Are you trying to pick me up and push me around? Really?" Dkt. #32-16 at 2:28 – 2:54; Dkt. #32-21 at 4:7-9. Officer Holliman then proceeded to manhandle, push and aggressively shove Mr. Phelps toward -- and out of -- the first front door. *See* Dkt. #32-16 at 2:28 – 2:54. And, circumstantially, the takedown in the parking lot occurred almost immediately after Phelps insisted that Holliman could not "slam him down" and asked why he had done that to him. Plaintiff's evidence is sufficient to survive summary judgment on the First Amendment retaliation claim.

Furthermore, the law was "clearly established" such that Officer Holliman should have known that his retaliatory actions would violate Mr. Phelps' First Amendment rights. *See, e.g., Hill,* 482 U.S. at 453–54; *United States v. McKinney,* 9 F. App'x 887, 889-90 (10th Cir. 2001); *Stearns v. Clarkson,* 615 F.3d 1278, 1283–84 (10th Cir. 2010); *Youngblood v. Qualls,* 308 F. Supp. 3d 1184, 1199-1200 (D. Kan. 2018).

Officer Holliman is not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

WHEREFORE, premises considered, Plaintiff respectfully requests that the Court deny Defendant Holliman's Motion for Summary Judgment (Dkt. #32).

Respectfully submitted,

/s/Robert M. Blakemore

Daniel E. Smolen, OBA #19943
danielsmolen@ssrok.com
Robert M. Blakemore, OBA #18656
bobblakemore@ssrok.com
Bryon D. Helm, OBA #33003
bryonhelm@ssrok.com
**Smolen & Roytman**
701 South Cincinnati Avenue
Tulsa, OK 74119
Phone:  (918) 585-2667
Fax:  (918) 585-2669

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of November 2024, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

<u>/s/Robert M. Blakemore</u>